UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHERRY L. STEPHENS,

                Plaintiff,

v.                                  **DECISION AND ORDER**
                                       12-CV-1069S

CAROLYN W. COLVIN,[1]
ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1.    In this action, Plaintiff Sherry Stephens challenges an Administrative Law Judge's ("ALJ") determination that she was not disabled within the meaning of the Social Security Act ("the Act").

2.    On February 26, 2009, Stephens filed an application for Disability Insurance Benefits ("DIB") under Title II of the Act, claiming she was unable to work after a March 9, 2005 motor vehicle accident due to a herniated disc in her neck and back. (R. 94-95, 137.)[2] Her application was denied on August 6, 2009. (R. 50-53.) Stephens then requested a hearing, which was held before ALJ William Weir on January 6, 2011. (R. 22-48.) Stephens was represented by counsel at the hearing, at which she appeared in person and testified. (Id.)

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. She is substituted for Michael J. Astrue as the Defendant in this action under Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Citations to the administrative record are designated as "R."

1

3.      ALJ Weir considered her DIB application *de novo* and, on May 23, 2011, issued a written decision finding Stephens was not disabled. (R. 10-17.) He also found there was no good cause to reopen the denial of an earlier DIB application she had filed. (Id.) Stephens requested review by the Appeals Council, which denied the request on September 18, 2012. She commenced this civil action on November 2, 2012, challenging the Commissioner's final decision.[3]

4.      On January 17, 2014 and January 21, 2014, respectively, Stephens and the Commissioner each filed a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 11 and 13.) The motions were fully briefed on February 21, 2014, at which time this Court took the matter under advisement.  For the reasons set forth below, the Commissioner's motion is granted and Stephens' motion is denied.

5.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842

---

[3]  The ALJ's May 23, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

(1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

8. The five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

9. Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. In this case, the ALJ made the following findings with regard to the five-step process: (1) Stephens had not engaged in substantial gainful activity since her alleged disability onset date of March 9, 2005 (R. 12); (2) her borderline intellectual

4

functioning, neck and back pain, and depression were severe impairments within the meaning of the Act (Id.); (3) these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Id.); (4) Stephens had the residual functional capacity ("RFC") to perform light work with the exception that she was limited to work involving simple instructions (R. 14); (5) she was not able to perform her past relevant work (R. 16); and (6) jobs existed in substantial number in the national economy that an individual of her age, education, past relevant experience, and RFC could perform (R. 16-17).

11.     Stephens contends the determination that she is not disabled is not supported by substantial evidence. In particular, she maintains the ALJ erroneously failed to give controlling weight to the opinion of her primary physician, and improperly analyzed her credibility.

12.     ALJ Weir gave "very limited weight" to the opinion of Dr. Nadella, who was Stephens' primary physician during the relevant time period. In contrast, he gave "great weight" to the assessments of three consultative examiners: Dr. Bender, who conducted a medical examination and whose findings are discussed below; Dr. Baskin, who evaluated Stephens' intellectual functioning and concluded any cognitive problems could be accommodated by a restriction to work involving simple instructions; and Dr. Ryan, who conducted a psychiatric examination and found Stephens' depression did not significantly limit her ability to follow and understand simple directions and perform simple tasks. (R. 15-16.) The ALJ explained that Dr. Nadella's statement of total disability due to chronic pain syndrome was entitled to little weight because it is conclusory and his records contained very limited objective supporting criteria. (R. 16.)

Stephens does not dispute this explanation, but contends that the ALJ violated the treating physician rule[4] by failing to properly assess the weight to be accorded a treating physician's opinion where sufficient supporting evidence is lacking.

13. Where, as here, the treating physician's opinion is not "well supported" by other medical evidence, the ALJ must consider a number of factors to determine the weight that will be given: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence that supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant. 20 C.F.R. § 404.1527(d)(1-6). Among other things, ALJ Weir noted that: Stephens treated with Dr. Nadella regularly during the relevant period; his treatment records indicate Stephens' range of motion is limited by pain, but the records do not contain objective tests indicating the extent of limitations; Nadella prescribed Stephens pain medication in a consistent dosage over an extended time; and, he did not note any improvement or exacerbation of Stephens' symptoms over time. (R. 15.) Nadella's records indicate he referred Stephens to a pain management physician, but there is no evidence that she consulted with that specialist. (Id.) The ALJ also considered Dr. Nadella's statement of total disability in light of the record as a whole—including the consultative physicians' assessment—and found Nadella's opinion was inconsistent with the medical evidence.

---

[4] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." DeRoman v. Barnhart, No. 03-CV-0075, 2003 U.S. Dist. LEXIS 11217, at * 32 (S.D.N.Y. July 2, 2003). Effective March 26, 2012, the Commissioner amended §§ 404.1527 and 416.927. Uu FR 10651, 10656. This opinion refers to regulations in effect when the ALJ adjudicated this claim.

In sum, it is apparent that ALJ Weir considered the requisite factors in concluding he would accord only "very limited weight" to Dr. Nadella's opinion. Stephens provides no citations in support of her assertion that Dr. Nadella's opinion was entitled to "great weight" based on her lengthy treatment relationship alone, and such a conclusion is inconsistent with the balancing of factors required by the regulation. It is well established that "the less consistent [the treating physician's] opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

14.    Stephens also suggests the ALJ did not properly develop the administrative record when he failed to re-contact Dr. Nadella for additional information. Stephens does not state how the record was deficient and there is no indication that the treatment records received from Dr. Nadella were incomplete. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citation omitted).

15.    As for Stephens' credibility, ALJ Weir found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms [i.e.—daily pain in her neck and back which, in turn, causes her to be depressed]; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ ] residual functional capacity assessment." (R. 14.) Stephens urges the ALJ's credibility finding was improper because his conclusion that her statements were inconsistent with

7

his own RFC determination is meaningless boilerplate language, and he should have drawn a favorable inference from her good work history.

16. Courts in this district have recognized that "[I]t is not sufficient for an ALJ to merely state that he finds the claimant incredible to the extent that her complaints are inconsistent with his RFC determination." Kunkel v. Comm'r of Soc. Sec., No. 12-CV-6478, 2013 U.S. Dist. LEXIS 11791, at *58 (W.D.N.Y. Aug. 20, 2013). Rather, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 SSR LEXIS 4, at *3-4 (SSA July 2, 1996).

17. This Court finds that the ALJ properly assessed Stephens' credibility in light of the record a whole, including her work history. In particular, the ALJ reviewed the limitations described by treating and consultative sources, which are inconsistent with Stephens' claim that her symptoms were totally disabling. The consultative medical examiner, Dr. Bender, determined that Stephens had full fine motor activity of the hands, no limitations in walking or climbing, only mild limitations in handling objects, and moderate limitations in bending, pushing, pulling, lifting, and reaching due to neck and back pain. (R. 342-346.) Dr. Nadella routinely noted that Stephens' range of motion was limited by pain, but that she had a normal gait and station, and could sit and stand comfortably. (R. 287, 290, 292-93, 295, 298, 301, 308, 311, 313, 316, 322.) ALJ Weir noted that Stephens failed to follow recommended treatments that might have relieved her symptoms. Specifically, there was no indication she attended physical therapy as

8

was recommended following a discectomy in 2006, or that she saw the pain management specialist recommended by Dr. Nadella after he found she was not taking her pain medication as prescribed. To the extent Stephens claimed an inability to function due to a borderline intellect, the ALJ noted that she had been able to hold various jobs for several years and had no cognitive difficulties performing her work in the past. (R. 15.) The ALJ's reasons are sufficiently specific to conclude that he considered relevant factors in light of the entire evidentiary record in arriving at his credibility determination.

* * * * *

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated:  June 21, 2014
       Buffalo, New York

                                    /s/William M. Skretny
                                     WILLIAM M. SKRETNY
                                         Chief Judge
                                   United States District Court